# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUAN CARLOS OCASIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-cv-921 (TSC) |
| | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Before the Court is Defendant U.S. Department of Justice's ("DOJ") motion to dismiss, or in the alternative motion for summary judgment. (ECF No. 8) Upon consideration of the motion, the response and reply thereto, and for the following reasons, the Court GRANTS in part and DENIES in part DOJ's motion.

## I.     BACKGROUND[1]

*Pro se* plaintiff Juan Carlos Ocasio brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.*, challenging DOJ's response to his FOIA request. The FOIA request sought a DOJ Office of Inspector General[2] ("OIG") investigation file concerning a complaint Ocasio filed with the Federal Bureau of Investigation ("FBI"). (ECF No. 1 at 2)[3]

---

[1] The facts taken from the Complaint are assumed to be true for purposes of the motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2] The DOJ Office of Inspector General investigates misconduct allegations against DOJ employees. (ECF No. 8-1, Waller Decl. ¶ 2)

[3] Because Ocasio's page numbering is not consistent, for ease of reference the Court will refer to the page numbers assigned by the Court's Electronic Filing System.

Ocasio alleged in his FBI complaint that a third party[4] had illegally impersonated a federal officer and also violated the Stolen Valor Act[5] by falsely claiming the receipt of military honors. (ECF No. 1 at 2; ECF No. 10 at 2-5)

Ocasio submitted his FOIA request seeking the records of the OIG investigation, specifically DOJ-OIG case file number 9402553, on June 11, 2012. (ECF No. 4 at 3) OIG notified Ocasio on June 14, 2012 that it had received his request and assigned it control number 12-OIG-174. Over two months later, on August 23, 2012, Ocasio mailed a letter to OIG inquiring as to the status of his FOIA request. (*Id.* at 9) On November 19, 2012, OIG denied Ocasio's FOIA request, stating that "the documents responsive to your request have exceeded the OIG's five-year retention policy and therefore have been destroyed pursuant to that policy." (*Id.* at 11)

On November 30, 2012, Ocasio filed an administrative appeal regarding his request with the DOJ Office of Information Policy ("OIP"). (*Id.* at 13) OIP responded to the appeal on May 29, 2013, affirming OIG's initial denial on partly modified grounds and stating that "[w]hile OIG informed you that records that might have been responsive to your request were destroyed pursuant to the agency's record retention and disposition schedules . . . to the extent that responsive records exist, without consent, proof of death, official acknowledgement of an investigation, or an overriding public interest . . . [s]uch records responsive to your request would be categorically exempt from disclosure" pursuant to 5 U.S.C. § 552(b)(7)(C). (*Id.* at 17) Ocasio thereafter filed the instant lawsuit.

---

[4] Because the name of the third party is not relevant to the instant motion and to protect their privacy, they will be referred to herein as "C.G."

[5] The Supreme Court declared the version of the Stolen Valor Act in place at the time of Ocasio's FOIA request unconstitutional in *U.S. v. Alvarez*, 132 S. Ct. 2537 (2012). Congress subsequently amended the law in the Stolen Valor Act of 2013. 18 U.S.C. § 704.

DOJ states that, in preparing its declaration for this litigation, it undertook an additional search for the requested file. Deborah Marie Waller, Paralegal Specialist and FOIA Officer for OIG, revisited her search to record the destruction date of the file, and noted that the date was missing. (ECF No. 18-2, Waller Suppl. Dec. ¶ 4) As a result, she decided to once again search for the investigation file, and learned that, contrary to information reported to her during her initial search, it was possible that the file requested by Ocasio may have been located in off-site storage. (Waller Decl. ¶ 10) Notwithstanding OIP's previous determination that any responsive records would be categorically exempt from disclosure to the extent they existed, Waller nonetheless located the records and had them recalled. (*Id.*) The file contained a total of 296 pages. (Waller Suppl. Decl. ¶ 5) After retrieving the records from archives, Waller conducted a page-by-page review of the documents, and, based on that review, determined that the file "was comprised of law enforcement records of an individual that are categorically exempt from disclosure under FOIA exemption 7(C), and that the exemption applies to all documents maintained in the file." (Waller Decl. ¶ 11-13; Def. Mot. 10) DOJ has not produced any records in response to Ocasio's request.

## II.    LEGAL STANDARD

### a.    Motion to Dismiss Pursuant to Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely[,]" the facts alleged in the

complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal quotation marks and citation omitted). Moreover, a pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). If the facts as alleged, which must be taken as true, fail to establish that a plaintiff has stated a claim upon which relief can be granted, the Rule 12(b)(6) motion must be granted. *See, e.g.*, *Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

### b. Motion for Summary Judgment

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). Summary judgment may be rendered on a "claim or defense . . . or [a] part of each claim or defense." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb*, 433 F.3d at 895 (quoting *Liberty Lobby*, 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc., v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987).

In considering a motion for summary judgment, "the evidence of the nonmovant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Liberty Lobby*, 477 U.S. at 255; *see also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

c. <u>FOIA</u>

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Responsibility & Ethics in Washington v. DOJ*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). FOIA requires that federal agencies comply with requests to make their records available to the public, unless such "information is exempted under [one of nine] clearly delineated statutory language." *Id.* (internal quotation marks omitted); *see also* 5 U.S.C. § 552(a), (b).

"'FOIA cases typically and appropriately are decided on motions for summary judgment.'" *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). The district court conducts a *de novo* review of the government's decision to withhold requested documents under any of FOIA's specific statutory exemptions. 5 U.S.C. § 552(a)(4)(B). Thus, the burden is on the agency to show that nondisclosed, requested material falls within a stated exemption.

*Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing

5 U.S.C. § 552(a)(4)(B)); *Liberty Lobby*, 477 U.S. at 254. In cases concerning the applicability

of exemptions and the adequacy of an agency's search efforts, summary judgment may be based

solely on information provided in the agency's supporting declarations. *See, e.g.*, *ACLU v. U.S.

Dept. of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Students Against Genocide v. Dept. of State*,

257 F.3d 828, 838 (D.C. Cir. 2001). "If an agency's affidavit describes the justifications for

withholding the information with specific detail, demonstrates that the information withheld

logically falls within the claimed exemption," and "is not contradicted by contrary evidence in

the record or by evidence of the agency's bad faith, then summary judgment is warranted on the

basis of the affidavit alone." *ACLU*, 628 F.3d at 619. "Ultimately, an agency's justification for

invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* (internal

quotation marks omitted) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

However, a motion for summary judgment should be granted in favor of the FOIA requester

"[w]hen an agency seeks to protect material which, even on the agency's version of the facts,

falls outside the proffered exemption[.]" *Coldiron v. DOJ*, 310 F. Supp. 2d 44, 48 (D.D.C. 2004)

(quoting *Petroleum Info. Corp.*, 976 F.2d at 1433).

    The FOIA requires that "[a]ny reasonably segregable portion of a record shall be

provided to any person requesting such record after deletion of the portions which are exempt."

5 U.S.C. § 552(b). More specifically, "[i]t has long been a rule in this Circuit that non-exempt

portions of a document must be disclosed unless they are inextricably intertwined with exempt

portions." *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir.

1977). In order to withhold a file or portion thereof under a FOIA exemption, "the Government

must make that showing in its *Vaughn* index and in such affidavits as it may submit therewith."

*Kimberlin v. DOJ*, 139 F.3d 944, 950 (D.C. Cir. 1998). "The purpose of a *Vaughn* index is to permit adequate adversary testing of the agency's claimed right to an exemption, and those who contest denials of FOIA requests -- who are, necessarily, at a disadvantage because they have not seen the withheld documents -- can generally prevail only by showing that the agency's *Vaughn* index does not justify withholding information under the exemptions invoked." *Schiller v. NLRB*, 964 F.2d 1205, 1209 (D.C. Cir. 1992) (internal quotation marks and citations omitted).

## III. ANALYSIS

### a. DOJ's Motion to Dismiss for Failure to State a Claim

DOJ argues that Ocasio has failed to state a claim under Fed. R. Civ. P. 12(b)(6) because his Complaint requests relief solely on the basis of DOJ's failure to respond to the FOIA request within the twenty-day statutory time limit under 5 U.S.C. § 552(a)(6)(A)(i). (Def. Mot. 5) DOJ argues that because it cured its violation of the twenty-day time limit before Ocasio filed suit, Ocasio's claim is moot.[6] (*Id.*)

The Complaint contains a single count in which Ocasio alleges that "Defendants have violated FOIA by failing to produce any and all non-exempt records responsive to Plaintiffs June 1 [sic], 2012 FOIA request within the twenty (20) day time period required by 5 U.S.C. 552(a)(6)(A)(i)." (ECF No. 1 at 3) However, Ocasio cannot properly challenge the timeliness of DOJ's response, as "the FOIA does not create a cause of action for an agency's untimely response to a FOIA request. The statute clearly provides a requester a remedy for an agency's non-compliance with its time limit provisions: a direct avenue to the district courts to 'enjoin the

---

[6] The parties do not dispute that because DOJ responded to the FOIA request before this suit was filed, Ocasio was required to exhaust his administrative remedies. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 63-64 (D.C. Cir. 1990) ("[A]n administrative appeal is mandatory if the agency cures its failure to respond within the statutory period by responding to the FOIA request before suit is filed . . . once the agency responds to the FOIA request, the requester must exhaust his administrative remedies before seeking judicial review"). The parties also do not dispute that Ocasio did eventually exhaust his administrative remedies. However, according to DOJ, the Complaint only challenges the timeliness of DOJ's response—an issue mooted by DOJ's eventual letter responding to the request. (Def. Mot. 5) Ocasio does not appear to respond to DOJ's argument in his opposition.

agency from withholding agency records and to order the production of any agency records improperly withheld.' 5 U.S.C. § 552(a)(4)(B)." *Bangoura v. U.S. Dep't of Army*, 607 F. Supp. 2d 134, 143 (D.D.C. 2009). Here, despite its initial failure to timely respond, DOJ eventually performed multiple searches and located the file. DOJ's motion to dismiss with respect to the timeliness of DOJ's response is therefore granted.

Although it is not styled as a count in his Complaint, Ocasio also requests that the Court "order Defendants to produce any and all non-exempt records responsive to plaintiffs June 1 [sic], 2012 FOIA and a *Vaughn* Index of allegedly exempt responsive records by a date certain [and] (3) enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Plaintiffs June 1 [sic], 2012 FOIA request." (ECF No. 1 at 4) It is well established that "[c]ourts must construe *pro se* filings liberally." *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*pro se* pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers"). Construing the Complaint liberally, the Court finds that Ocasio's lawsuit challenges not only DOJ's failure to timely respond to his request, but also DOJ's withholding of allegedly non-exempt records.[7]

---

[7] Even if the Complaint only challenged the timeliness of DOJ's response, the Court will read Ocasio's Complaint together with his opposition to DOJ's motion, the latter of which clearly contemplated claims regarding DOJ's withholding of non-exempt records. Courts may construe motion papers as amending a complaint after balancing whether "(1) the plaintiff was a *pro se* litigant; (2) the plaintiff could have amended his claim as a right because the defendant had not yet filed a responsive pleading; (3) the plaintiff recognized the need for and attempted to make a change to his original complaint; and (4) the lack of evidence showing that the defendant would be prejudiced by a grant to amend the complaint." *Carter v. Dep't of the Navy*, No. 05-0775, 2006 WL 2471520, at *6 (D.D.C. Aug. 24, 2006), *aff'd sub nom.*, 258 F. App'x 342 (D.C. Cir. 2007). In this case, Ocasio is proceeding *pro se* and could have amended his complaint as of right at the time he filed his opposition. Fed. R. Civ. P. 15(a)(1). Ocasio recognized the need to expand his original complaint to include a challenge to DOJ's FOIA withholdings, and DOJ has presented no evidence that it would be prejudiced by construing the Complaint as amended—DOJ itself raised the exemption issue in its motion for summary judgment, implicitly recognizing that Ocasio intended to challenge DOJ's withholding.

Because the Complaint is read to challenge DOJ's withholding of records and DOJ did not move to dismiss this claim, DOJ's motion to dismiss is denied to the extent it was intended to dismiss the entire action.

### b. DOJ's Motion for Summary Judgment

#### i. Adequacy of the Search

DOJ moves for summary judgment with respect to the adequacy of its search for responsive records. DOJ asserts that Ocasio's FOIA request specified the exact file sought, and OIG used the case number provided by Ocasio to search the appropriate database.[8] (Waller Decl. ¶ 7; Waller Suppl. Decl. ¶ 4) DOJ eventually found the requested file but withheld it in its entirety.[9] DOJ argues that its declarations are sufficient to show that the search conducted was adequate.

Ocasio does not challenge the adequacy of the search *per se*, but instead argues that the otherwise adequate search was untimely. This argument is based on the fact that DOJ initially claimed (in response to Ocasio's June 11, 2012 request) that the files had been destroyed, but then later, during a subsequent search performed after the filing of this lawsuit, realized that they had not in fact been destroyed. Ocasio alleges that DOJ did not conduct a search at all until after he filed this lawsuit. (ECF No. 10-1 at 8)

In ruling on the adequacy of an agency's search in response to a FOIA request, "[t]he question is not whether there might exist any other documents possibly responsive to the request,

---

[8] OIG stores its electronic records in two separate databases: an investigative records database for records relating to complaints of misconduct against DOJ employees (the Investigation Data Management System, or IDMS), and an audit and inspection records database for records relating to broader DOJ programs and operations. (Waller Decl. ¶¶ 2-5) DOJ searched only the IDMS, and the Court finds that was appropriate, as Ocasio had specifically sought an investigation file and therefore responsive records were unlikely to be found in the audit and inspections database.

[9] Ocasio's FOIA request contained 12 parts and subparts. (ECF No. 4 at 3) Because Ocasio does not allege that DOJ failed to adequately search for any part of subpart of his request, the Court will consider DOJ's search for the case file to also cover each part and subpart of Ocasio's request.

but rather whether the *search* for those documents was *adequate.* The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994) (internal quotation marks and citations omitted). An agency may prove the reasonableness of its search via the declaration of a responsible agency official, so long as the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith. *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). There is no requirement that an agency search every record system, but the agency must conduct a good faith, reasonable search of those systems of records likely to possess the requested information. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The agency declaration can demonstrate reasonableness by "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Sanders v. Obama*, 729 F. Supp. 2d 148, 155 (D.D.C. 2010), *aff'd sub nom. Sanders v. DOJ*, 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011) (citation omitted). Once an agency has provided adequate affidavits, the burden reverts to the plaintiff to demonstrate the lack of a good faith search. *Id.* The presumption of good faith "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

Ocasio does not allege that DOJ failed to search the appropriate databases for the investigation file. Nor does Ocasio allege that DOJ failed to conduct an adequate search within the IDMS database. Ocasio's argument appears to challenge the sufficiency of the search *before* the file was found. However, even though the search was untimely, DOJ did eventually search

the only database where responsive documents were likely to be found and used the detailed information provided in the FOIA request to guide its search. The Court therefore finds that the search was adequate; the timeliness of DOJ's search does not render it inadequate given that the requested documents were eventually located. *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 68 (D.D.C. 2003) ("[A] lack of timeliness or compliance with FOIA deadlines does not preclude summary judgment for an agency, nor mandate summary judgment for the requester"). "Once the Court determines that the agency has, 'however belatedly, released all nonexempt material, [it has] no further judicial function to perform under the FOIA.'" *Jacobs v. Fed. Bureau of Prisons*, 725 F. Supp. 2d 85, 89 (D.D.C. 2010) (citation omitted); *Atkins v. DOJ*, No. 90–5095, 1991 WL 185084, at *1 (D.C. Cir. Sept. 18, 1991) ("The question whether DEA complied with the [FOIA's] time limitations in responding to [appellant's] request is moot because DEA has now responded to this request"); *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013) ("If the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court"). No purpose would be served by this Court speculating on the adequacy of DOJ's prior searches which indicated the records were destroyed -- the records have been found, and DOJ searched the appropriate channels to find them. As such, DOJ's motion for summary judgment with respect to the adequacy of the search is granted.

ii.  DOJ's Withholding of Records Pursuant to Exception 7(C)

DOJ also moves for summary judgment with respect to its assertion of FOIA Exemption 7(C). DOJ argues that the entire investigation file was properly withheld pursuant to Exemption 7(C) because the records are indisputably law enforcement records, C.G. has a substantial

privacy interest in keeping them withheld, and there is no public interest in disclosure. Specifically, DOJ alleges that "Plaintiff seeks official information from government law enforcement files that would identify personal information about named third party private citizens involved in an FBI investigation that Plaintiff triggered," and that the privacy interests outweigh publication of the records where the records reveal "little or nothing about the agency's own conduct."  (Def. Mot. 13-14)

Ocasio concedes that the records are law enforcement records.  (ECF No. 10-1 at 13) Ocasio apparently also does not dispute that Exemption 7(C) applies to at least some of the records.  (*Id.*)  Ocasio's only argument is that DOJ has not released reasonably segregable non-exempt portions of the records, and did not provide a *Vaughn* index, meaning neither he nor the Court can determine what is exempt and what is not.  (*Id.* at 4, 13-14)

The FOIA contains nine exemptions on which agencies may rely to withhold documents. Under Exemption 7, the FOIA "does not apply" to "records or information compiled for law enforcement purposes" if they fall into one of six enumerated categories.  5. U.S.C. § 552(b)(7). Exemption 7(C) protects from disclosure law enforcement records to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  To determine whether disclosure constitutes an unwarranted invasion of public privacy, the agency and the reviewing court must weigh the public interest in the release of information against the privacy interest in nondisclosure.  *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989).  "On the privacy side of the ledger, our decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants."  *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003).  This type of

third-party information is "categorically exempt" from disclosure under Exemption 7(C), in the absence of an overriding public interest in its disclosure. *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995).

In assessing the public's interest in disclosure, "[t]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Citizens for Responsibility & Ethics in Washington v. DOJ* ("*CREW*"), 746 F.3d 1082, 1093 (D.C. Cir. 2014) (quoting *Dep't of Def. v. FLRA*, 510 U.S. 487, 497 (1994)) (internal quotation marks omitted). "Where the privacy concerns addressed by Exemption 7(C) are present, . . . [the requester] must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake [and that] . . . the information is likely to advance that interest." *National Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). The inquiry "should focus not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld." *Schrecker*, 349 F.3d at 661.

In order to demonstrate an overriding public interest in disclosure, a plaintiff may show that the withheld information is necessary to "shed any light on the [unlawful] conduct of any Government agency or official." *Reporters Comm.*, 489 U.S. at 772–73. In making such a showing, a plaintiff must assert "more than a bare suspicion" of official misconduct. *Favish*, 541 U.S. at 174. She "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* Absent such a showing, the balancing requirement does not come into play. *See id.* at 175; *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007) ("Unsubstantiated assertions of government

wrongdoing . . . do not establish 'a meaningful evidentiary showing.'") (quoting *Favish,* 541 U.S. at 175).

A plaintiff may also assert that the requested records serve the public interest by exposing the substance and application of law enforcement policy. As the District of Columbia Circuit has held, "matters of substantive law enforcement policy are properly the subject of public concern, whether or not the policy in question is lawful." *CREW*, 746 F.3d at 1095 (internal quotation marks and citations omitted). Additionally, "the public may have an interest in knowing that a government investigation itself is comprehensive, that the report of an investigation released publicly is accurate, that any disciplinary measures imposed are adequate, and that those who are accountable are dealt with in an appropriate manner." *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984).

### 1. Privacy Interest

DOJ has clearly articulated a privacy interest sufficient to invoke Exemption 7(C). Ocasio requested the file of an identified third party regarding an FBI investigation into allegations of wrongdoing. "There is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir. 1991) (internal quotation marks and citation omitted). Ocasio does not contest the privacy interest at stake, and the Court will consider that issue conceded. *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded").

## 2. Public Interest

Ocasio challenges the DOJ's assertion that the entire file should be withheld pursuant to Exemption 7(C) because there is no public interest in disclosing the withheld documents. While Ocasio's arguments are not easily discernible, the Court will construe his filings liberally with respect to the public interests allegedly at stake.

First, Ocasio argues that there is a public interest in identifying those who claim false military honors and therefore perpetrate fraud on the government. (ECF No. 10-1 at 4) Ocasio does little to develop this argument, aside from pointing to a host of exhibits regarding the Stolen Valor Act, illegible and unidentified photographs, and two petitions for writ of certiorari to the Supreme Court. The Court cannot properly discern the basis for Ocasio's argument or how the cited exhibits support it. *Davis v. Pension Benefit Guarantee Corp.*, 734 F.3d 1161, 1166-67 (D.C. Cir. 2013). Ocasio claims that he plans to use the records to lecture "on the epidemic of fake heroes" and specifically expose C.G. as allegedly violating the Stolen Valor Act. (ECF No. 4 at 4) However, whether or not C.G. lied regarding his military history has no bearing on the public's right to know what the government "is up to" -- the records would shed light only on C.G.'s actions, not the agency's. This is not a public concern in the context of the balancing test under Exemption 7(C). *Canning v. DOJ*, 567 F. Supp. 2d 104, 109 (D.D.C. 2008).

Second, Ocasio alleges that the OIG file relates to C.G.'s impersonation of a federal officer after he had been terminated by the Immigration and Naturalization Service ("INS"). (ECF No. 10 at 2-3) Ocasio claims that the records contain evidence of an assault perpetrated by C.G. while impersonating a federal officer, and withholding the records deprives the victim of the assault their right to seek redress against C.G. and others. (*Id.* at 3) However, Ocasio fails

once again to demonstrate how evidence of this alleged assault implicates the public's interest in knowing what their "government is up to."

Third, Ocasio alleges that the records will prove "the level to which the US Government went to conceal, obstruct and obviate federal proceedings." (*Id.*) According to Ocasio, C.G. testified against an acquaintance of Ocasio in two federal proceedings, and C.G.'s testimony was instrumental in those cases. Ocasio claims that the requested documents would cast doubt on C.G.'s credibility as a witness in those two cases. (*Id.*) However, regardless of whether or not these allegations have any basis, the impact of the records on C.G.'s credibility as a witness in prior proceedings in which Ocasio was not a party is not a matter of public concern.

Lastly, Ocasio claims (albeit obliquely) that OIG failed to adequately investigate C.G., covered up C.G.'s alleged malfeasance, and inappropriately failed to prosecute. Ocasio states in his Complaint "that he was a first hand percipient witness to the many alleged civil rights violations committed by [C.G.]. While [sic] under the false guise of him being a United States Immigration and Naturalization Special Agent." (ECF No. 1 at 2) In his FOIA request, Ocasio further explains "[m]y request concerns the operations and activities of the Department of Justice, at two separate occasions the Department of Justice office of the inspector general [sic] had the opportunity to investigate [C.G.]. In both matters the United States has declined to prosecute and all of the statute of limitations have run." (ECF No. 4 at 4) In filings before other courts, Ocasio alleged that while impersonating a federal officer, C.G. arrested numerous individuals who were later convicted based at least in part on C.G.'s testimony. (ECF No. 10-9 at 9)

While most of the evidence on which Ocasio relies to support this allegation is either irrelevant or unintelligible, two documents attached to his opposition are relevant: "synopses"

from the OIG investigation file itself.[10]  The first synopsis explains that OIG received a complaint that C.G. had been identifying himself as a federal agent and police officer to numerous individuals after he was terminated from INS; was displaying a police badge; was carrying a firearm; and was "effect[ing] traffic stops and arrests, under the guise of a Law Enforcement Officer."  (ECF No. 10-2 at 37)  OIG then interviewed numerous individuals and confirmed that C.G. had carried a concealed weapon and identified himself as a law enforcement officer after being terminated.  OIG also noted that a California police department had received a complaint related to C.G. after C.G. (then a private security guard) used force against an "unruly customer" at a restaurant and claimed that he was authorized to use force as a federal agent.  (*Id.*)  OIG concludes the synopsis by noting that "[t]he U.S. Attorney's Office Northern District of California requested a prosecution report."  (*Id.*)

The second synopsis explains that DOJ forwarded the record of investigation to an assistant U.S. attorney in the Northern District of California, and reiterated the allegations against C.G., including that "while working as a security guard, [C.G.] pointed a gun to [the victim's] head and told him that he . . . was with the Oakland Task Force."  (*Id.* at 38).  The case was later assigned to a different assistant U.S. attorney who declined to prosecute.  (*Id.*)  The case was then presented to an Alameda County Deputy District Attorney, who also declined prosecution.  (*Id.*)  The synopsis indicates via a checkmark at the top of the form that the investigation status was "CLOSED."  (*Id.*)

Based on these two synopses, the Court cannot conclude that there is *no* public interest in the disclosure of the records.  DOJ investigated allegations of serious misconduct, including that a former INS officer may have been making potentially illegal arrests.  Despite these allegations,

---

[10] Ocasio does not explain how he obtained these two documents.  Both documents are OIG "Report of Investigation" synopses captioned with case number 9402553, the same case number referenced in Ocasio's FOIA request.  (ECF No. 10-2 at 37-38)

DOJ declined to prosecute. There is therefore some public interest in "what the government is up to" in this case with respect to the substantive law enforcement policy DOJ employed in handling its investigation: how DOJ investigated an individual accused of making arrests under the guise of federal legal authority, and why DOJ failed to prosecute such an individual. Contrary to DOJ's assertion, the investigation file might reveal something about the agency's own conduct. (Def. Mot. 14). While Ocasio may have not alleged enough to require disclosure, there is at least some public interest counterweight to balance against the privacy interests. *See Favish*, 541 U.S. at 174-75.

        3.   DOJ's Justifications for Withholding the Entirety of the Records Pursuant to Exemption 7(C)

In the normal case applying Exemption 7(C), after identifying the public and private interests at stake, the agency (and the Court) must then balance these interests and determine whether there exists an invasion of privacy that is "unwarranted." Alternatively, if the records are categorically exempt from disclosure because the balance "*characteristically* tips in one direction," *CREW*, 746 F.3d at 1095 (citations omitted) (emphasis in original), then the agency can dispense with the balancing test and withhold the records as categorically exempt. In either scenario, the agency can withhold those documents (or portions thereof) that fall within the exemption, but must disclose any reasonably segregable, non-exempt records to the requester.

DOJ argues that "the law enforcement records here are categorically exempt from disclosure under Exemption 7(C) and Defendant is not required to segregate the information." (ECF No. 18, Def. Reply 7) DOJ claims a *Vaughn* index was therefore unnecessary because the "documents responsive to Plaintiff's FOIA request are all related to the alleged misconduct of a Department employee, and OIG's investigation of the allegations" and are therefore exempt under 7(C), meaning there is no need for a *Vaughn* index because the records are uniformly and

categorically exempt and therefore "a *Vaughn* index would be superfluous in this case." (*Id.*) Ocasio contends that DOJ has not provided sufficient reasons for their blanket withholding, and without a *Vaughn* index there is no way to determine which records are exempt. (ECF No. 10-1 at 4, 14)

Ultimately, the issue requires a two-step analysis: first, whether DOJ properly withheld the entire file pursuant to a categorical rule applying Exemption 7(C). If withholding of the entire file was proper under Exemption 7(C), then logically there are no segregable portions of the record and a *Vaughn* index may not be necessary. However, if DOJ improperly withheld the file based on a categorical rule, the second question is whether DOJ provided enough information to show that the documents are properly withheld pursuant to the applicable balancing test, and that there are no reasonably segregable portions of the record.

As to the first question, the D.C. Circuit recently discussed categorical withholding under Exemption 7(C) in *Citizens for Responsibility and Ethics in Washington v. DOJ*.[11] In that case, plaintiff sought documents related to the FBI investigation of former House Majority Leader Tom DeLay. *CREW*, 746 F.3d at 1087. DOJ declined to produce the requested documents and claimed that the documents were categorically exempt from disclosure under Exemption 7(C) (among other exemptions). *Id.* at 1090. In particular, DOJ argued that because DeLay had a significant privacy interest in preventing disclosure and there was no countervailing public interest in disclosure, the documents could be categorically withheld without any particularized showing. *Id.* The D.C. Circuit reversed, holding that DOJ could not use its proposed categorical rule to withhold documents under Exemption 7(C). *Id.* at 1096.

---

[11] The parties understandably did not address the decision in *CREW* as it was released after DOJ filed its reply in this case. Neither party submitted a notice of supplemental authority.

First, the Court held that DOJ could not shield the documents from disclosure simply because they contained some personal, identifying information. *Id.* at 1094. DOJ argued that under the D.C. Circuit's prior ruling in *SafeCard*, the identity of individuals appearing in law enforcement records can never be probative of agency conduct and therefore the documents must be exempt. *Id.* The Court disagreed, explaining that "the DOJ does not seek to withhold only the identities of private citizens; it seeks to withhold every responsive document *in toto*. Although *SafeCard* may authorize the redaction of the names and identifying information of private citizens mentioned in law enforcement files, it does not permit an agency 'to exempt from disclosure *all* of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address.'" *Id.* (citation omitted) (emphasis in original); *see also Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995); *Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1328 (D.C. Cir. 2000); *Kimberlin v. DOJ*, 139 F.3d 944, 950 (D.C. Cir. 1998).

Second, the Court ruled that DOJ's categorical approach could not be sustained because the documents did not fit "into a genus in which the balance *characteristically* tips in one direction . . . [i]nformation about the FBI's and the DOJ's investigation of major, wide-ranging public corruption is more likely to shed light on how the agencies are performing their statutory duties than a discrete internal disciplinary proceeding. Although a substantial privacy interest is at stake here, in light of the similarly substantial countervailing public interest, the balance does not characteristically tip in favor of non-disclosure." *CREW*, 746 F.3d at 1095-96 (internal quotation marks and citation omitted) (emphasis in original).

In this case, it is unclear from the record whether DOJ actually applied a categorical rule. DOJ does not clearly explain into what "genus" the disputed records fall such that they characteristically tip in favor of non-disclosure. DOJ instead repeatedly asserts that the entire file is categorically exempt from disclosure under Exemption 7(C). (Waller Decl. ¶¶ 11, 13; Waller Suppl. Decl. ¶ 5) As the Court reads its submissions, DOJ asserts that all the documents are categorically exempt because they are law enforcement records related to a third party. (*Id.*; Def. Stmt. Pts. Auth. ¶ 10; Def. Mot. 15; Def. Reply 7-8) However, as the D.C. Circuit held in *CREW*, Exemption 7(C) does not apply to an entire record merely because it contains some identifying information, meaning DOJ cannot withhold the entire file on this reasoning alone. Either DOJ has not adequately explained the categorical rule it used, or it did not rely on a categorical rule at all.

Assuming DOJ did not apply a categorical rule, it was required to balance the privacy and public interests to determine whether the records were exempt. The Court cannot assess on the record before it whether DOJ actually engaged in a balancing test to determine what portions of the file were exempt under 7(C). DOJ alleges that for each page of the file, it weighed the privacy interest of the third party against the public interest in disclosure and determined that the records were exempt, specifically because the files related to a lower level employee and the allegations against that employee were not substantiated. (Waller Decl. ¶ 13; Waller Suppl. Decl. ¶ 5) In the same breath, DOJ claims that the records are "categorically" exempt. (Waller Suppl. Decl. ¶ 5) However, if DOJ employed a categorical approach, it would not have needed to consider the balancing test for each page individually. *Kimberlin v. DOJ*, 139 F.3d 944, 949 (D.C. Cir. 1998). Conversely, if DOJ truly considered each page of the record individually and weighed the public and privacy interests, then it did not apply a categorical rule.

Even if DOJ did engage in the balancing analysis, it has not provided the Court with enough information to determine whether the records were properly withheld because the privacy interests outweighed the public interest in disclosure. DOJ merely states that it applied the balancing test to each page, and that (apparently for each page) because C.G. was not a high level government official accused of serious misconduct, the balance always tipped in favor of nondisclosure. (Waller Decl. ¶ 13)

This situation mirrors the one in *Kimberlin*. There, the D.C. Circuit held that a categorical rule was not appropriate in applying Exemption 7(C) to DOJ Office of Professional Responsibility investigation files; instead the agency and the court would engage in a case-by-case balancing test. *Kimberlin*, 139 F.3d at 949. The Court then explained that "it will ordinarily be enough for the court to consider, when balancing the public interest in disclosure against the private interest in exemption, the rank of the public official involved and the seriousness of the misconduct alleged." *Id.* Using this test, the Court found that the agency could properly invoke Exemption 7(C) for the records at issue because the employee was not sufficiently senior and the misconduct was not severe enough to warrant public concern. However, the Court also found that "[i]n order to withhold an entire file pursuant to Exemption 7(C), the Government must show that disclosure of any part of the file 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.' Moreover, the Government must make that showing in its *Vaughn* index and in such affidavits as it may submit therewith." *Id.* at 950 (citation omitted). The Court found that the agency's *Vaughn* index was entirely lacking in specificity, and that it had inappropriately relied on Exemption 7(C) to withhold entire documents: "In the most egregious instance the Government claims that Exemption 7(C) applies to a 37-page document consisting of a cover letter and 36 pages described only as 'material

collected by the United States Attorney's Office.'" *Id.* The government argued "that because 'the requested OPR file focuses completely on one government employee,' the '[r]elease of any of the file, whether redacted or not, would necessarily . . . cause [the AUSA's] . . . name to be associated with allegations of misconduct and could cause him 'great personal and professional embarrassment.'" *Id.* The Court held that it was not "obliged to accept that conclusion without more specification of the types of material in the file." *Id.*

Here, DOJ similarly argues that because the requested file focuses on one individual, the entire file cannot be released. This is not enough to guide the Court regarding proper application of Exemption 7(C). It is simply impossible for the Court to determine on the basis of the DOJ declarations whether there is any reasonably segregable portion of the record that could be disclosed. This difficulty is compounded by the fact that the DOJ did not provide a *Vaughn* index with its motion for summary judgment, as is customary. Absent a *Vaughn* index, the Court cannot ascertain the nature of the documents and what portions may properly be withheld.

DOJ has only satisfied its burden with respect to identifying information that is categorically exempt under *SafeCard*. It has not proven that (1) the documents are of a "genus" which characteristically tips in favor of nondisclosure, and it can therefore apply a categorical rule to withhold the documents, or (2) it cannot release redacted versions of the records which remove any identifying information or personal details. The Court therefore grants in part and denies in part DOJ's motion for summary judgment with respect to Exemption 7(C).

## IV.    CONCLUSION

For the foregoing reasons, DOJ's motion to dismiss is GRANTED with respect to the timeliness claim. DOJ's motion for summary judgment is GRANTED with respect to the

adequacy of the search and identifying information which is properly withheld under Exemption 7(c), and DENIED with respect to the balance of the requested records.

ORDERED: that *on or before October 31, 2014*, DOJ shall either redact from the documents withheld pursuant to FOIA Exemption 7(C) information that would identify protected third parties and then provide Ocasio with those redacted documents, or provide a more detailed explanation, including a *Vaughn* index, as to why those documents are exempted in full and do not contain segregable information; and it is further

ORDERED: that *on or before November 21, 2014,* Ocasio may file any response to DOJ's disclosures and/or submissions.

Date: October 3, 2014

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge